# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**ELIZABETH STACKHOUSE,**

        Plaintiff,                              Case No. 2:07-cv-1241
                                                        **JUDGE GREGORY L. FROST**
      v.                                            **Magistrate Judge Terence P. Kemp**

**FORWARD AIR, INC.,**

        **Defendant.**

## OPINION AND ORDER

      This matter is before the Court for consideration of Defendant's Motion for Summary Judgment (Doc. # 16), Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum In Opposition") (Doc. # 29), and Defendant's Reply Memorandum in Support of its Motion for Summary Judgment (Doc. # 32). Based on the following, the Court **GRANTS** Defendant's motion.

### I. Background

      Forward Air is a provider of expedited surface transportation and related logistics services to the wholesale and international transportation community, including logistics companies, customs brokers, freight forwarders, airlines, and other companies or individuals. (Tamela Wright Declaration[1] ("Wright Decl.") ¶ 2.) Forward Air's services include the pickup and delivery of cargo, customs brokerage services, container and freight management, and storage. *Id.* The company also operates a network of freight terminals located at or near airports in 85 cities in the United States and Canada, including a central sorting facility near

---

[1]Ms. Wright's Declaration is attached as Exhibit 1 to Defendant's Motion for Summary Judgment. (Doc. # 20-2.)

Rickenbacker Airport in Central Ohio. *Id.*

In 1998, Forward Air hired Plaintiff as a customer service representative. (Plaintiff's Deposition[2] ("Pl. Dep.") at 126, 138.) Her duties included taking calls from Forward Air's customers, entering orders into the company's electronic database, working with freight forwarders, and performing any necessary follow-up work. *Id.* at 138. Approximately one year after Plaintiff was hired, she was promoted to Forward Air's Customs Brokerage Department ("Department"), which was established that year to provide customs brokerage and transportation services for customers shipping cargo between Canada and the United States. (*Id.* at 139-41, 187, 194; Wright Decl. ¶ 1). Plaintiff was an integral part of bringing the Department into operating status. (Tamela Wright Deposition[3] ("Wright Dep.") at 23.)

Supervisor Tamela Wright is a licensed customs broker who was hired by Forward Air when the Department was created to manage the Department and develop the company's customs brokerage business. (Pl. Dep. at 140, 141-42, 151; Wright Dep. at 15, 21.) Supervisor Wright was Plaintiff's direct manager during the time she worked in the Department. (Pl. Dep. at 142; Wright Decl. ¶ 3.)

In 2005 the Department had six employees whose duties included gathering the information necessary to process United States Customs Forms, inputting that information into the computer, as well as signing and organizing files. (Wright Decl. ¶ 4, Wright Decl. Ex. A). Individual employees had additional responsibilities, such as Plaintiff's duty to monitor customs

---

[2]Ms. Stackhouse's deposition transcript is attached as Exhibit 1 to Defendant's Notice of Filing of Deposition Transcripts in Support of its Motion for Summary Judgment. (Doc. # 19-2.)

[3]Ms. Wright's deposition transcript is attached as Exhibit 4 to Defendant's Notice of Filing of Deposition Transcripts in Support of its Motion for Summary Judgment. (Doc. # 19-5.)

files that were put on "hold" to ensure that the information needed to complete the customs process was obtained in a timely manner. *Id.* The principle duty of everyone within the Department was to complete the production work necessary to ensure that goods could be cleared through United States Customs. *Id.*

Plaintiff's co-worker, Diana Terry, told Plaintiff of an incident where Terry used her own social security number to clear a shipment through U.S. Customs.[4] (Pl. Dep. at 210-211; Wright Decl. ¶ 6; Diana Terry Declaration[5] ("Terry Decl.") ¶ 2.) Specifically, Terry was unable to obtain the tax identification information of the Ultimate Consignee who was to receive the merchandise. *Id.* Terry made the decision to use her own social security number on a U.S. Customs Form to clear the shipment. (Diana Terry Deposition[6] ("Terry Dep.") at 70-71; Terry Decl. ¶ 2.) Terry processed the customer's name in Forward Air's computer system, but does not recall whether she actually made an entry on a U.S. Customs Form because she obtained the customer's tax identification number that day. (Terry Dep. at 51-53, 66-67.)

Terry had never used her own social security number in this way before. (Terry Decl. ¶

---

[4]References to these events in Plaintiff's Memorandum in Opposition contradict her prior deposition testimony with regard to the timing of the event. In her memorandum, Plaintiff attributes the events to "sometime in/or about June 2005." However, Plaintiff testified at least four times at her deposition that she did not know when the events took place. (Pl. Dep. at 210, 211, 213, 214). As Plaintiff's recollection of the timing of these events was fairly sought at least four times at deposition, the Court disregards Plaintiff's post-deposition effort to place them in June of 2005. *See Day v. The Krystal Co.*, 471 F. Supp. 2d 874, 886-87 (E.D. Tenn. 2007) (refusing to rely on remarks in the plaintiff's affidavit which were not disclosed in her deposition or in response to interrogatories).

[5]Ms. Terry's Declaration is attached as Exhibit 2 to Defendant's Motion for Summary Judgment. (Doc. # 20-3.)

[6]Ms. Terry's deposition transcript is attached as Exhibit 6 to Defendant's Notice of Filing of Deposition Transcripts in Support of its Motion for Summary Judgment. (Doc. # 19-7.)

2.) She asked Plaintiff about her action. *Id.* Plaintiff told Terry that she should not have used her own social security number, that it was illegal. *Id.* After receiving Plaintiff's input, Terry informed Supervisor Wright that she had intended to use her own social security number to clear a shipment. (Terry Decl. ¶ 2; Wright Decl. ¶ 6). Supervisor Wright counseled Terry that it was not acceptable for her to use her own social security number and that she should never do it again. (Terry Decl. ¶ 2; Wright Decl. ¶ 6). Terry has followed Supervisor Wright's instructions and has not repeated her mistake. (Terry Decl. ¶ 2).

Plaintiff contends that from the time Terry went to Supervisor Wright about the incident, Plaintiff's relationship with Wright began to sour. Plaintiff believes that she was "no longer considered []a team player because I expressed my concern about this practice." (Pl. Decl. ¶ 14; Pl. Dep. at 213)

In July 2005 Plaintiff planned to vacation in Pittsburgh, Pennsylvania. Plaintiff scheduled a meeting to be held during her vacation with the U.S. Customs Port Director in that city. (Pl. Dep. at 200-02.) Plaintiff testified that she scheduled the meeting because wanted to assist Forward Air's Pittsburgh Terminal Manager upgrade his terminal to an approved container freight station. Plaintiff arranged for this meeting without the knowledge or permission of Supervisor Wright. *Id.* When Wright found out about the meeting she cancelled it. *Id.* Wright prepared a three-page disciplinary memorandum, with 26 exhibits, addressing Plaintiff's scheduling of the Pittsburgh meeting and Plaintiff's performance issues. (Pl. Dep. at 203; Pl. Dep. Ex. 11; Wright Decl. ¶ 9; Wright Decl. Ex. B). Wright counseled Plaintiff in a lengthy meeting when Plaintiff returned from her vacation. (Wright Decl. ¶ 9). Wright testified that after the Pittsburgh incident, which she found professionally embarrassing, she was no longer

4

comfortable with having Plaintiff in the Department. (Wright Decl.¶ 8.)

Supervisor Wright felt that Plaintiff's performance failed to improve after the July 2005 disciplinary meeting and continued to counsel Plaintiff with respect to her performance between July 2005 and the end of her employment. (Wright Decl. ¶ 10). Plaintiff believed that after the July disciplinary meeting, Wright "constantly" identified performance issues, bringing them to Plaintiff's attention. (Pl. Dep. at 231-33). Plaintiff described Wright as turning into a "bully" who was trying to make Plaintiff quit. *Id.*

During that time period, Wright specifically counseled Plaintiff on her work regarding making arrangements to transport goods to and from Forward Air's terminals by outside delivery services. (Pl. Dep. Ex. 13; Wright Decl. Ex. C). Wright had instructed Plaintiff to follow the process her co-worker Schlaegel had adopted because Plaintiff was not billing properly, which caused Forward Air to lose money. *Id.* Additionally, Wright felt that Plaintiff misused her time on the telephone, which impacted her productivity. Wright also believed that Plaintiff had been deliberately ignoring her communications and refusing to respond to Wright's emails. *Id.*

On the morning of November 4, 2005, Supervisor Wright learned of additional problems with Plaintiff's work. (Wright Decl. ¶ 16). Wanda Stacey, who works a late night shift in the Department, reported to Ms. Wright that on November 3, 2005 she had "discovered a number of problems" with the U.S. Customs files on which Plaintiff had recently worked. (Wanda Stacey Declaration[7] ("Stacey Decl.") ¶ 7.) That morning Wright placed a note on Plaintiff's desk which read: "What was the issue on these? We never wait on Craig for IRS numbers, we find a

---

[7]Ms. Stacey's Declaration is attached as Exhibit 3 to Defendant's Motion for Summary Judgment. (Doc. # 20-4.)

way to clear. Tks, Tammy. Pls see me." (Pl. Dep. at 153-54; Pl. Dep. Ex. 7.) Wright terminated Plaintiff that morning. Plaintiff believes that the note referred to two shipments she was holding while waiting for the customer to provide federal tax identification numbers and that she was terminated because she "would not use another customer's tax ID number to declare shipments through Customs." (Pl. Dep. at 152.)

Plaintiff filed a wrongful termination action in the Franklin County Common Pleas Court. On December 10, 2007, this action was removed to this Court from the. Plaintiff alleges that she was wrongfully terminated in violation of the public policy of Ohio for her refusal to falsify U.S. Customs documents and that she was defamed by Forward Air.

On January 30, 2009 Forward Air filed its motion for summary judgment, in which they request dismissal of both Plaintiff's causes of action. That motion is ripe for review.

## II. Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c). *Id.* In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a scintilla of evidence in support of

6

the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Anderson*, 477 U.S. at 251. The Court, however, may not make credibility determinations or weigh the evidence. *Anderson*, 477 U.S. at 255.

The party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Catrett*, 477 U.S. at 323. Once the moving party has met its initial burden, the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)); *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995) ("nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial"). "Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to 'simply show that there is some metaphysical doubt as to the material facts.'" *Glover v. Speedway Super Am. LLC*, 284 F. Supp.2d 858, 862 (S.D. Ohio 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### III. Analysis

Forward Air requests summary judgment on Plaintiff's causes of action for wrongful termination in violation of the public policy of Ohio and for defamation.

**A. Wrongful Termination**

Employment relationships in Ohio are generally governed by the common law doctrine of employment at will. However, the Ohio Supreme Court has held that Ohio "public policy warrants an exception to the employment at will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." *Greeley v. Miami Valley Maint. Contractors, Inc.*, 49 Ohio St. 3d 228 (Ohio 1990). Over the next several years the tort developed, ultimately evolving into the following elements:

> 1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
>
> 4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Collins v. Rizkana*, 73 Ohio St. 3d 65, 69-70 (Ohio 1995) ("we adopt the following suggested analysis in *Painter v. Graley*, 70 Ohio St. 3d 377, 384 n.8 (Ohio 1994)). The clarity and jeopardy elements are questions of law and the causation and justification elements are questions of fact. *Id.* at 70. Failure to appropriately establish any one element calls for dismissal of the entire claim.

Defendant argues that Plaintiff has failed to establish the clarity and jeopardy elements of her claim and that she has failed to raise any genuine issue of material fact as to the causation

8

and overriding justification elements of her claim. This Court agrees.

### 1. Plaintiff has failed to establish the clarity element and/or the jeopardy element of her wrongful discharge claim.

Because the Ohio Supreme Court characterizes the clarity inquiry as a question of law, for summary judgment purposes this Court must determine whether a clear public policy is manifested in the federal statute upon which Plaintiff relies. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 599 (6th Cir. 2003). In her Complaint, Plaintiff alleges a public policy based upon 18 U.S.C. § 1028, which makes it "a criminal offence to knowingly use false or fraudulent identification documents to defraud the United States." Complaint ¶ 9. Also in her Complaint, Plaintiff alleges a connection between the federal statute and the allegation she was ordered to "falsify certain United States Customs Forms by affixing false and fraudulent social security numbers and/or taxpayer identification numbers onto certain customs forms . . ." *Id.* ¶ 8.

In its motion for summary judgment, Forward Air argues that the statute on which Plaintiff relies is entirely unrelated to the U.S. Customs Forms and procedures at the center of her claim. *See Hundley v. Dayton Power & Light Co.*, 2002 Ohio 3566, 148 Ohio App. 3d 556, 562-63 (Ohio Ct. App. 2002) (affirming summary judgment for the employer because the statutes cited by the plaintiff did not support a public policy against the conduct he alleged).

In her memorandum in opposition, Plaintiff does not respond to Forward Air's argument and has therefore failed to meet her burden of establishing the clarity element of her wrongful discharge claim. *See Bradley v. Mary Rutan Hosp. Assoc.*, 322 F. Supp. 2d 926, 932 n.7 (S.D. Ohio 2004) (granting summary judgment on wrongful discharge claim stating, "it appears that Plaintiff has abandoned her public policy claim or otherwise failed to respond and create a genuine issue of material fact that necessitates a trial on it"); *InterRoyal Corp. v. Sponseller*,

9

889 F.2d 108, 111 (6th Cir. 1989) ("[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim").

With regard to the jeopardy inquiry, also characterized as a question of law, "for summary judgment purposes [this Court] must determine whether dismissing employees under the circumstances of [Plaintiff]'s dismissal would jeopardize the clear public policy of [18 U.S.C. § 1028]." *Himmell*, 342 F. 3d at 599. Although Plaintiff does address this factor in her opposition memorandum, she fails to address the factors the Sixth Circuit found necessary to determine whether the jeopardy element is satisfied, *i.e.*, (1) what kind of conduct is necessary to further the public policy at issue; (2) whether the employee's actual conduct fell within the scope of conduct protected by this policy; and (3) whether employees would be discouraged from engaging in similar future conduct by the threat of dismissal. *See id.* Consequently, Plaintiff has failed to establish that her dismissal jeopardized any clear public policy that could possibly be found in 18 U.S.C. § 1028.

### 2. Plaintiff has failed to raise a genuine issue of material fact as to whether she established the causation element of her wrongful discharge claim.

Even if Plaintiff had established the clarity and jeopardy elements of her claim of wrongful discharge, Forward Air would still be entitled to summary judgment because Plaintiff has failed to raise any genuine issue as to whether her dismissal was motivated by conduct related to the alleged public policy against falsification of U.S. Customs documents. Plaintiff contends that her dismissal was motivated by her refusal to falsify information on forms to be submitted to U.S. Customs. Plaintiff sets forth evidence and argument related to three incidents that she claims raise issues of material fact as to the cause of her dismissal.

First, on the day she was terminated Plaintiff received a note from her manager stating: "what was the issue on these? We never wait on Craig for IRS numbers, we find a way to clear! Tks. Tammy. Pls see me." Plaintiff argues that "[t]he only plausible reason for this note is to instruct [Plaintiff] to use the Tax ID number of another consignee to clear this shipment through U.S. Customs." (Doc. # 29 at 13.) This Court disagrees. Indeed, Plaintiff's "only plausible reason" is simply speculation.

That is, the uncontroverted evidence before the Court shows the following: The files to which the note referred were being held by Plaintiff for tax identification numbers. The Department was required to supply U.S. Customs with two documents related to shipments from outside the United States. The first is Form 3461, which initially permits the shipment to be released into the United States. The second is Form 7501 ("CF 7501"), which designates the tax identification number of the Ultimate Consignee of the shipment. Many of the goods received by the Department are sent to tradeshows in the United States. Goods going to tradeshows are typically sent to a location such as a convention center where the owner of the goods does not have a presence except during the show itself. Consequently, there are three options for tax identification numbers of the Ultimate Consignee as illustrated in United States. Customs Directive No. 355-079A:

> 7.6 The Ultimate Consignee at time of release does not necessarily need to match the Ultimate Consignee provided at time of entry summary processing on a CF 7501. For example, if the Ultimate Consignee at time of release is unknown, the Filer will provide the identification number for the U.S. premises to which the merchandise is to be delivered.

(Pl. Dep. Ex. 10, p. 3; Wright Decl. Ex. D). Plaintiff had access to copies of the U. S. Customs regulations and procedures, which were available to her both on the government agencies

11

website and in the Department.  (Pl. Dep. at 146-47).

This directive demonstrates two points: (1) the tax identification number used at time of release [Form 3461] does not necessarily need to match the Ultimate Consignee's tax identification number provided at time of entry summary processing on a CF 7501; and, (2) special rules apply in connection with naming Ultimate Consignees for trade show shipments.  (Pl. Dep. pp. 188-190; Pl. Dep. Ex. 10, p. 3; Wright Decl. Ex. D).  In compliance with U.S. Customs Directive 355-079A, the Ultimate Consignee on Form 3461 for trade show goods may include at least three different options:  the owner/displayer of the merchandise, the proprietor of the trade show location, or a company that receives and holds the goods in advance of the tradeshow.  Plaintiff makes much of the fact that Supervisor Wright used a different tax identification number on Form 3461 than she did on CF7501.  However, when confronted with the facts at deposition, Plaintiff was forced to admit that the files were properly completed by Wright–that is, in accordance with U.S. Customs Directive 355-079A.  Plaintiff's speculation that this practice was illegal is simply incorrect.  Consequently, Plaintiff's actual conduct was not the refusal to engage in illegal activity, but her failure to explore legal alternatives for identification of the Ultimate Consignee.

Second, in Plaintiff's Memorandum in Opposition she argues that, "[s]ometime around 2003, [Supervisor] Wright instructed me to use the Tax Id numbers of other customers to clear entries through U.S. Customs in instances where the Tax Id numbers of the Ultimate Consignee was (*sic*) unknown to Forward Air."  (Pl. Mem. pp. 1-2, 3-4, 7; Pl. Decl. ¶10).  This allegation fails to raise an issue of material fact as to the cause of Plaintiff's termination for several reasons.  As discussed immediately above, the use of tax identification numbers other than

12

those of the Ultimate Consignee is legal. Further, the temporal gap between this alleged statement and Plaintiff's termination precludes any reliance upon the statement as supporting an inference with respect to her eventual discharge. *Cf. Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025-26 (6th Cir. 1993) (discriminatory remarks made "nearly a year before" the challenged employment decision "were made too long before the layoff to have influenced the termination decision"). Finally, nowhere in Plaintiff's Complaint or deposition testimony does she make these allegations even though she was given the opportunity at the close of her deposition to fully explain the bases for her claims and to describe all of the evidence that she possessed in support of those claims. (Pl. Dep. at 286-87). Plaintiff's last minute effort to supply new evidence is simply not permitted. *See Smith v. Consolidated Rail Corp.*, No. 95-3727, 1996 U.S. App. LEXIS 19126, at *11 (6th Cir. 1996) (affidavit was properly excluded because the plaintiff failed to disclose all hypotheses supporting her claims for recovery at her deposition when specifically questioned on the relevant facts); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 459-460 (6th Cir. 1986) (district court properly refused to deny summary judgment on the basis of an affidavit which supplemented the vague responses the plaintiff gave during her deposition).

Third, Plaintiff contends that an incident in which co-worker Dianna Terry used her own social security number indicates that Forward Air intentionally used improper tax identification numbers in other situations. In Plaintiff's Affidavit filed in support of her memorandum in opposition, Plaintiff avers that Terry told Plaintiff that Supervisor Wright instructed Terry to use improper tax identification numbers on U.S. Customs Forms. (Doc. # 27.) This testimony fails to support Plaintiff's claim that her refusal to falsify U.S. Customs

13

documents caused her discharge for two reasons .

Initially, the statements are hearsay and cannot be accepted by this Court as evidence. *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir. 1994) ("only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment"). Also, even if the statements were not hearsay, the Court would still be required to disregard them because they are inconsistent with Plaintiff's description of her discussions with Terry and both Terry's deposition testimony and her declaration contradict the statements Plaintiff is now seeking to attribute to her. Plaintiff offers no justification for the contradiction between her deposition testimony and her affidavit. Thus, Paragraph 11 of Plaintiff's declaration must be disregarded. *See Aerel v. PCC Airfoils*, 448 F.3d 899, 908 (6th Cir. 2006) ("A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction.").

Accordingly, with respect to the causation element of her wrongful discharge claim the Court concludes that Plaintiff has failed to raise any issues of material fact that would make it necessary to resolve the difference at trial.

**3. Plaintiff has failed to raise a genuine issue of material fact as to whether she established the overriding business justification element of her wrongful discharge claim.**

If Plaintiff had established all three of the other elements of her claim of wrongful discharge, Forward Air would still be entitled to summary judgment because Plaintiff has failed to raise any genuine issue as to whether Forward Air possessed an overriding business justificaiton for discharging her. Specifically, Forward Air has offered admissible evidence showing that the week Plaintiff was terminated she was counseled with respect to improper

14

billing on local pick-up and delivery services and within days of that counseling Plaintiff failed to properly bill two of her customers for that service. (Stacey Decl. ¶ 7). Further, the week of her termination Plaintiff was counseled about her phone use and relieved of that responsibility. (Wright Decl. ¶ 15). Also during that week Plaintiff failed to respond timely to an email from Supervisor Wright, behavior that had been ongoing.

Moreover, it is undisputed that in July 2005 Plaintiff received a detailed disciplinary memorandum and counseling addressing Forward Air's concerns with her performance and her unapproved planned visit to U.S. Customs in Pittsburgh and to Forward Air's Pittsburgh terminal manager. It is undisputed that the Pittsburgh plans were made by Plaintiff while Wright was on vacation, without Wright's knowledge or approval. (Pl. Dep. p. 199-200; Wright Decl. ¶ 8). Wright claims that the meeting would be detrimental and that the way in which it was scheduled was a professional embarrassment to her. (Wright Decl.¶ 8).

Plaintiff does not dispute that any of these incidents occurred. Instead, Plaintiff argues that she worked closely with Wright, was integral to getting the Department up and running, was seen as valuable, and was given performance based pay increases. Even so, none of these points call into question the undisputed events which led to the termination of her employment.

Further, with regard to the Pittsburgh incident, Plaintiff argues that the only plausible explanation for Wright's concern about the Pittsburgh incident is if she thought that Plaintiff might disclose to U.S. Customs Forward Air's practice of falsifying Tax ID numbers. However, Plaintiff's "only plausible explanation" (like her previous one) is certainly not a reasonable inference that can be drawn from any evidence in the record. *See Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("Conclusory assertions, supported only by Plaintiff's own

15

opinions" cannot defeat summary judgment); *Travelodge Hotels, Inc. v. Govan*, 155 F. App'x 235, 237 (6th Cir. 2005) (holding that briefs which are "simply filled with conclusory allegations . . . failed to present sufficient evidence" to withstand summary judgment). Again, Plaintiff appears to make unreasonable speculations that simply fail as evidence to support her claims.

Finally, Plaintiff attempts to raise material issues of fact with respect to the Forward Air's reason for terminating her employment by making comparisons between herself and Dianna Terry. Plaintiff argues that both made clerical errors but, unlike Plaintiff, Terry was not terminated for her performance. Plaintiff, however, submits no evidence that can be used to compare Terry's bare admission that she made clerical errors (Terry Dep. p. 75-76) with the multiple problems that led to Plaintiff's termination. Since there is no evidence that Terry's clerical errors are comparable to the issues leading to Plaintiff's termination, her argument is meaningless. *Cf. Mitchell v. Toledo Hospital*, 964 F.2d 577, 583-84 (6th Cir. 1992) (a plaintiff must submit affirmative evidence that the individuals with whom the plaintiff seeks to compare her treatment engaged in conduct of comparable seriousness).

The evidence before the Court is such that no reasonable jury could return a verdict in Plaintiff's favor on whether Forward Air possessed an appropriate overriding business justification for her termination.

**4. Conclusion of wrongful discharge in violation of public policy claim.**

Forward Air met its burden of informing this Court of the bases for its motion for summary judgment. *Catrett*, 477 U.S. at 323. However, even when viewing the evidence in the

light most favorable to Plaintiff, she has failed to meet her burden of setting "forth any specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as it relates to Plaintiff's wrongful discharge in violation of Ohio public policy claim.

**B. Defamation**

In Plaintiff's Complaint, she alleges that Supervisor Wright, acting within the scope of her employment, published a written report or verbally told U.S. Customs officials false information about Plaintiff. In its motion for summary judgment, Forward Air requests summary judgment on this claim because Plaintiff conceded at deposition that she had no evidence that Forward Air communicated to U.S. Customs anything about her that was false or defamatory. (Pl. Dep. at 65-66, 70). In her memorandum in opposition, Plaintiff does not respond to Forward Air's argument with respect to the defamation claim. Consequently, Plaintiff has failed to respond or make any arguments that might have created a material issue of fact with respect to the claim. *See Bradley*, 322 F. Supp. 2d at 932 n.7 (granting summary judgment on wrongful discharge claim because the plaintiff failed to respond and create a genuine issue of material fact); *Sponseller*, 889 F.2d at ("[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim").

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as it relates to Plaintiff's defamation claim.

### IV. Conclusion

Based upon the foregoing, the Court **GRANTS** Defendant's Motion for Summary

Judgment. (Doc. # 16.) The Clerk is **DIRECTED** to **ENTER FINAL JUDGMENT** in accordance with this Opinion and Order.

    **IT IS SO ORDERED**.

                                                                     /s/ Gregory L. Frost
                                                  **GREGORY L. FROST**
                                                  **UNITED STATES DISTRICT JUDGE**